## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VINCENT M. GASPER** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : CIVIL ACTION NO. 19-2676 |
| | : |
| **SCHULSON COLLECTIVE, LLC, ET AL.** | : |
| | : |
| **Defendants.** | : |
| | : |

### MOTION FOR AN ORDER APPROVING SETTLEMENT

Vincent M. Gasper ("Plaintiff"), and Defendants, Schulson Collective, LLC ("Schulson Collective"), and Michael Schulson ("Schulson") (collectively, "Defendants"), through their respective counsel, hereby jointly submit this Motion for Approval of the parties' settlement of Plaintiff claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). The facts and arguments supporting the Motion are set forth in the accompanying Brief in Support of the Motion and incorporated by reference herein. For the reasons set forth therein, the parties respectfully request that the Court grant their Motion for Approval of Settlement. A proposed Order granting the requested relief accompanies this Motion.

Respectfully submitted,

*/s/ Fernando I. Rivera*
FERNANDO I. RIVERA, ESQ.
**CONSOLE MATTIACCI LAW**
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102

*Attorneys for Plaintiff*

Dated:  July 15, 2020

*/s/ Carianne P. Torrissi*
CARIANNE P. TORRISSI, ESQ.
**GOLDBERG SEGALLA, LLP**
PO Box 360, Buffalo, NY 14201
1700 Market Street, Suite 1418
Philadelphia, PA 19103

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VINCENT M. GASPER** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 19-2676** |
| : | |
| **SCHULSON COLLECTIVE, LLC, ET AL.** : | |
| : | |
| **Defendants.** : | |
| : | |

## [PROPOSED] ORDER

AND NOW, on this _____ day of _____, 2020, upon consideration of the parties' joint motion for approval of settlement of Plaintiff's FLSA claims (the "Motion"), it is hereby **ORDERED** that the Motion is **GRANTED**. It is further Ordered that the Proposed Settlement Agreement, attached as Exhibit A to the Motion, shall be executed by all parties within 7 days of this Order. The Court shall retain jurisdiction over any dispute(s) related to the parties' Settlement Agreement.

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| VINCENT M. GASPER | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-2676 |
| | : | |
| SCHULSON COLLECTIVE, LLC, ET AL. | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JOINT MOTION FOR AN ORDER APPROVING SETTLEMENT

Vincent M. Gasper ("Plaintiff"), and Defendants, Schulson Collective, LLC ("Schulson Collective"), and Michael Schulson ("Schulson") (collectively, "Defendants"), through their respective counsel, hereby jointly petition the Court for approval of the parties' settlement of Plaintiff's claims under, *inter alia*, the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). In support thereof, the parties aver as follows.

### I.   INTRODUCTION/RELEVANT FACTUAL BACKGROUND

1.     On June 19, 2019, Vincent M. Gasper ("Plaintiff"), brought claims in federal court against Defendants alleging that Defendants failed to properly compensate Plaintiff for overtime hours worked in violation of state and federal law, including the FLSA. *See* Plaintiff's Complaint (Dkt. No. 1). More Specifically, in this action, Plaintiff alleges that he was misclassified as an overtime-exempt employee for the duration of his employment (approximately 26 months) and that, as a result, he was owed overtime wages during that period. In defending against Plaintiff's allegations of unpaid overtime, Defendants denied all such allegations and asserted that Plaintiff's position was properly classified by Defendants as an exempt position under the FLSA at all relevant times,

and that Plaintiff was employed by Defendants in either a bona fide executive or bona fide administrative capacity, as such terms have been defined and delimited in regulations adopted by the Administrator of the Wage And Hour Division of the United States Department of Labor and the Pennsylvania Department of Labor and Industry, such regulations being published in the Code of Federal Regulations, Title 29, Part 541, §§ 541.100 to 541.204, and the Pennsylvania Code, Title 34, §231.83, and accordingly, Plaintiff is not entitled to the minimum wages or overtime compensation as alleged in his complaint. *See* Defendants' Answer (Dkt. No. 2).

In discovery, neither party was able to produce—and thus, it was disputed—records evidencing the amount of overtime hours worked by Plaintiff or the amount of loss wages he would have been paid had he established that he was legally entitled to same. Further, Defendants produced evidence that directly contradicted some of the contents of Plaintiff's personal records of hours worked, thus creating a credibility issue for Plaintiff.

After the exchange of written discovery, but before conducting depositions, the parties attended a settlement conference before Magistrate Judge Lynne A. Sitarski (the "Settlement Conference"), which resulted in a preliminary settlement of all of Plaintiff's claims, including his claims related to his termination under state and federal law pending before the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunities Commission ("EEOC").[1] Accordingly, the parties now submit this Memorandum of Law in support of their Stipulation of Settlement and Request for Approval.

---

[1] In addition to the claims currently pending in this litigation, Plaintiff has also filed claims against Defendants with the PHRC and EEOC related to his discriminatory and retaliatory termination in violation of federal and state anti-discrimination and anti-retaliation laws under the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Philadelphia Fair Practices Ordinance, as amended, Phila. Code § 9-1100, *et seq.* ("PFPO"), and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

## II.  LEGAL STANDARD

While the Third Circuit Court of Appeals has not yet addressed whether parties can settle actions for unpaid wages pursuant to the FLSA without court approval, district courts within this Circuit follow the approach taken by the majority of courts and require judicial approval of such a settlement. *See Nwogwugwu v. Spring Meadows at Lansdale, Inc.*, 2017 WL 2215264, at *1 (E.D. Pa. May 18, 2017); *see also Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 522–26 (E.D. Pa. 2016). When an employee brings a claim under the FLSA, and the parties subsequently agree to resolve the claim, the district court may enter a stipulated judgment after analyzing the proposed settlement agreement. *Rubbo v. PeopleScout Inc.*, 2017 WL 2010311, at *1 (E.D. Pa. May 11, 2017). When analyzing a proposed FLSA settlement, the district court must determine whether the settlement: (1) resolves a bona fide dispute; (2) is fair and reasonable to the employee; and (3) furthers or impermissibly frustrates the implementation of the FLSA in the workplace. *Nwogwugwu*, 2017 WL 2215264, at *2; *Kraus*, 155 F. Supp. 3d at 523.

Here, the Court should approve the parties' proposed settlement because, as set forth fully below, the proposed settlement and general release agreement, a true and correct copy which his attached hereto as Exhibit A (the "Settlement Agreement"), represents a fair and reasonable resolution to a bona fide dispute between the parties and furthers, as opposed to frustrates, the implementation of the FLSA in the workplace.

### A.  The Settlement Agreement Resolves a Bona Fide Dispute Between the Parties

A bona fide dispute involves factual issues as opposed to legal issues. *Nwogwugwu*, 2017 WL 2215264, at *2. A proposed settlement agreement resolves a bona fide dispute if it reflects a "reasonable compromise over issues, such as back wages, that are actually in dispute and are not a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* at *2. When

27022946.v1

the dispute falls within the contours of the FLSA and evidence exists that the defendant rejects the claims asserted against it, a bona fide dispute exists. *Id.*

Here, a bona fide dispute exists as to whether Plaintiff was misclassified as overtime-exempt and the calculation of his loss wages, if any. While Plaintiff asserted claims against the Defendants for violations of federal and state wage and hour laws—the FLSA, the Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania common law—for failing to pay Plaintiff for hours he worked in excess of forty hours per week over the course of his employment, Defendants, in their Answer and during discovery, denied liability for the wage claims asserted in Plaintiff's Complaint, asserted affirmative defenses to same, and produced evidence during discovery which diminishes Plaintiff's credibility and disputes Plaintiff's stated damages, thus impacting his odds of success at trial. Thus, the Settlement Agreement resolves a bona fide dispute between the parties.

### B.  The Settlement Agreement is Fair and Reasonable to Plaintiff

The Court should approve the Settlement Agreement because it is fair and reasonable to Plaintiff. When determining whether a proposed settlement agreement is fair and reasonable, courts consider the following nine factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Nwogwugwu*, 2017 WL 2215264, at *2.  In a single-plaintiff context, as opposed to a class, some of the above *Girsh* factors will not apply. *See*

*Howard v. Philadelphia Housing Auth.*, 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016); *Nwogwugwu*, 2017 WL 2215264, at *2 n.2.

    a.  <u>Factor 1</u>: **The complexity, expense, and likely duration of the litigation**

Per Order of this Court, the parties attended the Settlement Conference in hope of resolving Plaintiff's Wage and Hour Claims before incurring more substantial costs associated with conducting extensive discovery, including supplemental written discovery and depositions, dispositive motions, and a trial. By reaching an early preliminary resolution at the Settlement Conference, the parties are able to avoid expending additional and considerable time and resources associated with further discovery, motions, and trial. Particularly, during a global pandemic where it remains unclear when federal civil jury trials will resume. Absent a settlement, Plaintiff would have needed to take additional discovery as well as depose numerous defendants and third-parties to further establish liability and damages, and refute Defendants' various affirmative defenses. Similarly, Defendants would have needed to produce supplemental discovery, prepare and defend their witnesses for depositions and trial, and take the deposition of the Plaintiff. Thus, a settlement, at this stage, allows for Plaintiff to recover for his alleged back wages in a more efficient and timely manner.

    b.  <u>Factor 2</u>: **The reaction of the class to the settlement**

Plaintiff has not brought his wage claims on behalf of a class, therefore, this factor is inapplicable here. *See Howard*, 197 F. Supp. 3d 773 at 777 n.1.

    c.  <u>Factor 3</u>: **The stage of the proceedings and the amount of discovery completed**

When examining the stage of the proceeding at the time of settlement, courts look at whether "counsel had an appreciation of the merits and risks of proceeding to trial before

negotiating the [s]ettlement [a]greement." *Howard*, 197 F. Supp. 3d at 778. Here, prior to attending the Settlement Conference, the parties exchanged extensive written discovery, including ESI and requests for admissions, and worked through various discovery disputes. The initial exchange of discovery by the parties, including the absence of relevant information related to Plaintiff's computation of damages, enabled both parties to evaluate the merits and risks of the case, which were taken into consideration and discussed at the Settlement Conference. The extent to which Defendants' alleged conduct was not in good faith or done willfully, and the burden of proof thereof, was also taken into consideration when reaching the proposed settlement. Therefore, the parties' proposed settlement was reached only after careful consideration of the merits and risks of the case.

### d.  <u>Factors 4 & 5</u>: The risks of establishing liability and damages

As discussed above, proceeding to trial (after the dispositive motion stage) would have required Plaintiff to establish, by a preponderance of evidence, both liability and damages. Even assuming liability—which Defendants dispute—neither party was able to produce records evidencing the amount of overtime hours worked by Plaintiff or the amount of loss wages he would have been paid had he established that he was legally entitled to same. While in the absence of proper payroll record keeping by Defendants Plaintiff may testify to his hours worked and overtime compensation alleged owed, in this case, Defendants raise issues related to Plaintiff's credibility due to inconsistencies regarding work logs produced in discovery and worked performed for Defendants by Plaintiff's personal business. Thus, these issues result in legitimate questions regarding what, if any, Plaintiff is owed in lost wages.

Ultimately, at trial, Plaintiff would have to establish, without any physical documents, the hours he worked for each week of his two-year employment with Defendants and whether Plaintiff

27022946.v1

was owed overtime pay for such hours. Additionally, to be entitled to liquidated damages under the FLSA, Plaintiff would have to show that Defendants failed to act in good faith in violating Plaintiff's rights under the FLSA and refute Defendants' claim that it acted on the advice of legal counsel in classifying Plaintiff as an overtime-exempt employee. While Plaintiff's counsel believes that Plaintiff could have demonstrated that Defendants' conduct was likely not in good faith, counsel recognizes the risk of having to make such a showing at trial.

**e.**   <u>**Factor 6**</u>**: The risks of maintaining the class action through trial**

As stated above, Plaintiff has not brought his wage claims on behalf of a class, therefore, this factor is inapplicable here. *See Howard*, 197 F. Supp. 3d 773 at 777 n.1.

**f.**   <u>**Factor 7**</u>**: The ability of the defendants to withstand a greater judgment**

In discovery, Defendants have represented that there is no applicable insurance policy covering any potential award of damages or reasonable attorneys' fees and costs to Plaintiff. Additionally, Defendants who are in the restaurant industry in Philadelphia, Pennsylvania, have been severely impacted by COVID-19. Aside from the factual disputes in this case, the parties have also acknowledged the practical issues impacting Defendants' ability to withstand a greater judgment if this matter were to proceed through a trial and post-trial appeals. Similarly, in considering same, the Court should determine that Defendants may not be able to withstand a greater judgment down the road.

**g.**   <u>**Factors 8 & 9**</u>**: The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation**

Pursuant to the FLSA, an employee is entitled to his back wages, plus liquidated damages if a defendant's conduct was not in good faith, and attorneys' fees and costs. 29 U.S.C. § 216(b). Under the proposed Settlement Agreement, Plaintiff would receive a gross settlement amount of

$75,000.[2] *See* Exh. A. As proposed, Plaintiff is recovering almost all of his alleged unpaid overtime wages (estimated based on Plaintiff's recollection at approximately $80,000) and represents an amount greater than Plaintiff's then-annual salary (approximately $70,000). As almost always the case, if Plaintiff proceeded to trial and was successful, Defendants' exposure may have been greater and included a recovery of liquidated damages and attorneys' fees and costs. However, given the early stage at which the parties reached a preliminary settlement, and the amount of recovery for the Plaintiff, counsel for Plaintiff believes the settlement amount represents a substantial recovery and result.

### C.   The Settlement Agreement Furthers the Implementation of the FLSA

The Court should approve the Settlement Agreement because it furthers, as opposed to frustrates, the implementation of the FLSA in the workplace. For example, the Settlement Agreement does not frustrate the FLSA because it does not contain a confidentiality agreement, and the parties did not attempt to file the Settlement Agreement under seal. *See Nwogwugwu*, 2017 WL 2215264, at *3. Also, while the Settlement Agreement includes a general release, same is not overreaching as the parties' settlement also is intended to resolve all of Plaintiff's pending claims against Defendants, including his claims currently before the EEOC and PHRC. Thus, the Court's approval of a general release in the Settlement Agreement does not frustrate Plaintiff's rights by waiving statutory claims outside of the FLSA, because Plaintiff is knowingly waiving same to globally resolve all of his claims against Defendants, including specifically those arising under Title VII, the PHRC, the PFPO, and the FMLA. *See, c.f., Howard*, 197 F. Supp. 3d 773 at 779 (rejecting a broad general release where, without proper context or information regarding

---

[2] The Settlement Agreement is intended to serve as a settlement of all of Plaintiff's claims against Defendants, including Plaintiff's claims pending before the EEOC and PHRC and those arising under Title VII, the PHRC, the PFPO, and the FMLA.

27022946.v1

Plaintiff's other potential claims, the Court would be "blindly approv[ing]" a waiver of statutory claims outside of the FLSA).

Therefore, because the Settlement Agreement is a fair and reasonable resolution of the bona fide dispute between the Parties, and does not frustrate the implementation of the FLSA, the Court should approve the settlement.

### III. THE AWARD OF ATTORNEYS' FEES TO PLAINTIFF'S COUNSEL IS FAIR AND REASONABLE CONSIDERING THE RISK INVOLVED, THE WORK PERFORMED, AND THE RESULT ACHIEVED

Under the FLSA, the Court shall "allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In the Third Circuit, courts typically evaluate attorneys' fees through either the lodestar approach or the percentage recovery approach. *In re Diet Drugs Products Liability Litigation*, 582 F.3d 524, 540 (3d Cir. 2009). The prevailing method used by courts within the Third Circuit for wage and hour cases is the "percentage recovery method" under which counsel is awarded a "fixed portion of the settlement." *Kraus*, 155 F. Supp. 3d at 533. In evaluating the appropriateness of the attorneys' fees award under the percent recovery method, courts typically analyze the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards of similar cases.

*Kraus*, 155 F. Supp. 3d at 533. After consideration of the factors enumerated in *Kraus*, the Court should determine that Plaintiff's counsel's proposed payment of attorneys' fees and costs is fair and reasonable.

### A. Factors 1 & 2: The Size of the Fund Created and the Number of Persons Benefitted and the Presence or Absence of Substantial Objections by Members

9

**of the Class to the Settlement Terms and/or Fees Requested by Counsel**

Plaintiff has not brought the wage claims on behalf of a class, therefore, the settlement is on an individual basis, not a class basis, so the first two factors are inapplicable in this matter. *See Mitchell v. People for People Charter Sch., Inc.*, 2018 U.S. Dist. LEXIS 72691, *4 (E.D. Pa. April 27, 2018).

### B.  <u>Factor 3</u>: The Skill Efficiency of the Attorneys Involved

As set forth in the Affidavit of Fernando I. Rivera, Esquire, Plaintiff's counsel has substantial employment law experience, including experience handling wage and hour cases. *See* Exh. B.

### C.  <u>Factor 4</u>: The Complexity and Duration of the Litigation

Wage and hour claims, including FLSA claims, have been found to be complex by the Supreme Court of the United States. *See Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012) (stating "FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts"). Additionally, Plaintiff's counsel has spent a considerable amount of time litigating this case—112.4 hours, thus far—over the course of more than a year. *See* Exh. B. Specifically, Plaintiff's counsel spent a significant amount of time, *inter alia*, investigating Plaintiff's claims; drafting and filing Plaintiff's Complaint; propounding three sets of discovery requests upon Defendants, including a set of requests for admissions; issuing and coordinating service of third-party subpoenas; responding to Defendants' discovery requests; reviewing Defendants' discovery responses; resolving several discovery disputes, including sending and responding to deficiency letters; reviewing Plaintiff's discovery documents and ESI, including reviewing, redacting, and producing over 1,100 pages of ESI; conducting preparation sessions with Plaintiff related to his

deposition; negotiating settlement, including negotiating the terms of the settlement agreement; preparing for and attending a settlement conference; and petitioning the Court to obtain approval of the parties' settlement. *See* Exh. B.

### D. <u>Factor 5</u>: The Risk of Nonpayment

Plaintiff's counsel took Plaintiff's case on a contingent basis, with no guaranty of payment. *See* Exh. B. "Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." *High St. Rehab., LLC v. American Specialty Health Inc.*, 2019 U.S. Dist. LEXIS 147849, *35 (E.D. Pa. August 29, 2019) (quoting *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 U.S. Dist. LEXIS 75213, at *7 (D.N.J. 2012). Absent this settlement, Plaintiff's counsel would have proceeded to litigate this case, expanding more time and covering more costs (*e.g.*, costs of numerous depositions, briefing dispositive motions, and preparing for trial), without any guaranty of recovery.

In the context of class actions, this Court has also considered the percentage fee that would have been negotiated between Plaintiff and his counsel in its analysis regarding the reasonableness of fees. *See High St. Rehab.*, 2019 U.S. Dist. LEXIS 147849 at *37–38 (noting that in "an individual action, the customary contingent fee would likely range between thirty and forty percent of the recovery"); *see also Wallace v. Powell*, 288 F.R.D. 347, 375 (M.D. Pa. 2012) ("In private contingency fee cases, attorneys routinely negotiate agreements for between thirty percent and forty percent of the recovery."); *In re Ikon Ofc. Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."). In this individual action, Plaintiff entered into a retainer agreement with the undersigned counsel providing same with 40% of any potential recovery. *See* Exh. B. While not dispositive, this factor

favors approval of the parties' proposed settlement terms, including the payment of fees and costs to Plaintiff's counsel.

**E.  Factors 6 & 7: The Amount of Time Devoted to the Case by Plaintiff's Counsel and Awards in Similar Cases**

As set forth in more detail in the Affidavit of Fernando I. Rivera, Esquire, from the onset of researching Plaintiff's claims and drafting the Complaint through negotiating the Settlement Agreement and seeking this Court's approval of same, Plaintiff's counsel has spent approximately 112.4 hours on this case. *See* Exh. B. Additionally, when using the "percentage of recovery" method for attorneys' fees, as used here, the Third Circuit has held that 19% to 45% of the settlement fund is reasonable. *See Brumley*, 2012 WL 1019337, at *12; *Nwogwugwu*, 2017 WL 2215264, at *3. Further, a lodestar cross-check of the amount of attorneys' fees reveals that the amount is reasonable.[3] *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001) (noting that the purpose of the lodestar cross-check is to ensure that the percentage approach does not result in an "extraordinary" lodestar multiple or a windfall). Plaintiff's counsel, thus far, has spent a total of approximately 112.4 hours in connection with litigating this case. *See* Exh. B. Multiplying the hours expanded by Plaintiff's counsel by his hourly rate, equals a total of $35,520. *See id*. Therefore, the amount of attorneys' fees provided for in the Settlement Agreement (40% of the gross settlement fund), calculated by the percentage of recovery method, is less than the amount of attorneys' fees calculated under the lodestar method.

---

[3] When applying the lodestar method in a similar context, "the Third Circuit has recognized that multipliers 'ranging from one to four are frequently awarded in common fund cases[.]'" *See Wood v. AmeriHealth Caritas Servs., LLC*, No. 17-3697, 2020 U.S. Dist. LEXIS 60787, at *28–29 (E.D. Pa. Apr. 7, 2020); *see also Arrington v. Optimum Healthcare IT, LLC*, No. 17-3950, 2018 U.S. Dist. LEXIS 186192, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018) (approving fees with a lodestar multiplier of 5.3 in a wage and hour case even though the "lodestar multiplier is certainly on the higher end of the range of reasonable multipliers"); *Acevedo v. BrightView Landscapes, LLC*, No. 13-2529, 2017 U.S. Dist. LEXIS 163870, 2017 WL 4354809, at *20 (M.D. Pa. Oct. 2, 2017) (approving a 31% percentage-of-recovery rate for attorneys' fees where the lodestar multiplier was 1.3).

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, the parties respectfully request that the Court approve the Settlement Agreement, and enter the proposed order, as the Settlement Agreement represents a fair, reasonable, and adequate resolution to the bona fide dispute between the Parties and also does not frustrate the implementation of the FLSA in the workplace.


Respectfully submitted,

| | |
|---|---|
| */s/ Fernando I. Rivera* | */s/ Carianne P. Torrissi* |
| FERNANDO I. RIVERA, ESQ. | CARIANNE P. TORRISSI, ESQ. |
| **CONSOLE MATTIACCI LAW** | **GOLDBERG SEGALLA, LLP** |
| 1525 Locust Street, 9th Fl. | PO Box 360, Buffalo, NY 14201 |
| Philadelphia, PA 19102 | 1700 Market Street, Suite 1418 |
| rivera@consolelaw.com | Philadelphia, PA 19103 |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |


Dated:  July 15, 2020

13

# EXHIBIT A

## <u>CONFIDENTIAL SETTLEMENT AND GENERAL RELEASE AGREEMENT</u>

THIS CONFIDENTIAL SETTLEMENT AND GENERAL RELEASE AGREEMENT ("Agreement") is made and entered into by **Vincent M. Gasper** ("Gasper") and **Schulson Collective LLC and Michael Schulson** (collectively, the "Schulson Defendants")**,** for the following purposes and with reference to the following facts:

WHEREAS, Gasper filed a Civil Complaint in the United States District Court for the Eastern District of Pennsylvania against the Schulson Defendants, docketed as Civil Action No. 19-2676, and a Complaint of Discrimination with the Pennsylvania Human Relations Commission and Equal Employment Opportunity Commission (the "Actions"), asserting various legal claims related to his employment with the Schulson Defendants (the "Disputed Claims"); and

WHEREAS, the Schulson Defendants have denied any and all liability for the Disputed Claims asserted by Gasper; and

WHEREAS, the parties desire to make a full and final settlement of any and all of the Disputed Claims, without any judicial or administrative resolution of them and without any admission with respect to any issues presented or capable of being presented;

NOW THEREFORE, intending to be legally bound, and in consideration of the mutual promises contained in this Agreement and for other good and valuable consideration, the sufficiency and receipt of which is acknowledged, the undersigned agree as follows:

1. <u>Settlement Amount</u>.  In exchange for signing this Agreement, including the waiver and release of claims contained herein, as described fully in paragraphs 2 and 3 below, the Schulson Defendants agree to pay the amount of seventy-five thousand dollars ($75,000) in full and final settlement of all Disputed Claims ("Settlement Amount").  The Settlement Amount shall be paid as follows, upon receipt by counsel for the Schulson Defendants of the original copy of this Agreement executed by Gasper and within thirty (30) days following the expiration of the later of either the revocation period set forth in paragraph 3 below, or the Court's approval of the settlement of Gasper's asserted claims under the FLSA:

   - A check made payable to Console Mattiacci Law, LLC in the amount of $34,000.00 for which a Form 1099 will be issued;
   - A check made payable to Gasper in the amount of $20,500, representing complete satisfaction and final settlement of his alleged compensatory damages, including damages for pain and suffering and emotional distress, and for which a Form 1099 will be issued;
   - A check made payable to Gasper in the amount of $20,500, less all applicable income tax withholdings and other legally required deductions, in complete satisfaction and final settlement of any and all remaining claims for lost wages by Gasper for which a Form W-2 will be issued.

26619763.v1

Plaintiff acknowledges that, as a result of the COVID-19 crisis, many businesses are experiencing unanticipated and unprecedented challenges. Plaintiff agrees that, if the Schulson Defendants are unable to pay the Settlement Amount within the defined timeframe due to exigent circumstances caused by the COVID-19 crisis, the deadline to make such payments shall be extended for up to sixty additional days. The Schulson Defendants will make a good faith effort to make all payments in compliance with the original deadline. Counsel for the Schulson Defendants will notify Plaintiff's counsel if circumstances prevent full payment prior to the original deadline. Notwithstanding the foregoing, nothing in this Paragraph shall extend the time for which the Schulson Defendants must pay the settlement amount beyond ninety days from the date of execution of this Agreement.

Gasper understands and agrees that he is responsible for all applicable taxes due by him, if any, as a result of his receipt of his portion of the Settlement Amount. Gasper further understands and agrees that the Schulson Defendants are providing him with no representations regarding tax obligations or consequences that may arise from this Agreement. Gasper agrees to indemnify the Schulson Defendants and hold the Schulson Defendants harmless for all taxes, penalties and interest, withholding or otherwise, for any amounts due by Gasper, individually, based on his receipt of his portion of the Settlement Amount pursuant to this Agreement.

2. <u>Release.</u>  For and in consideration of the payments and benefits described in paragraph 1 above, and other good and valuable consideration, Gasper does fully and irrevocably release, remise and discharge Schulson Collective LLC and Michael Schulson (including their past and present employees, shareholders, officers, directors, agents, attorneys, insurers, predecessors, successors, subsidiaries, operating companies and affiliates (in their respective individual capacities as such)) (collectively, the "**Released Parties**"), from any and all waivable claims which he had, may have had, or now has against the Released Parties, for or by reason of any matter, cause or thing whatsoever, including any claim arising out of or attributable to his employment with the Schulson Defendants, with the exception of any claim that the Schulson Defendants violated their commitments under this Agreement.  Gasper  understands that by signing this Agreement, he is waiving any and all waivable rights or remedies which he ever had, or may now have, or may hereafter have against the Released Parties under any Federal, State, or local discrimination statute or law, including but not limited to: Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act ("ADA"); the Age Discrimination in Employment Act of 1967 ("ADEA"); the Equal Pay Act ("EPA"); the Civil Rights Act; the Family and Medical Leave Act ("FMLA"); the Fair Labor Standards Act ("FLSA"); the Pennsylvania Human Relations Act ("PHRA"); the Pennsylvania Equal Pay Law; the Pennsylvania Minimum Wage Act; and the Pennsylvania Wage Payment and Collection Law ("WPCL").

3. <u>Notice of Rights Under ADEA</u>**.**  Gasper understands that by signing this Agreement he is specifically releasing the Released Parties from any and all claims under the Age

2

Discrimination in Employment Act of 1967 ("ADEA").  In connection with that release, Gasper acknowledges that:

> Review Period.  He has been given at least twenty-one (21) days to review and consider the release of ADEA claims and other terms contained in this Agreement. He may sign this Agreement before the expiration of the twenty-one (21) day period; provided that, he understands and agrees that if he signs this Agreement before the expiration, he waives his right to consider the terms of the Agreement, including the release, for the full twenty-one (21) days.  The parties agree that changes to the terms of this Agreement, whether material or immaterial, will not restart the running of the twenty-one (21) day consideration period.

> Consultation with an Attorney.  Gasper has been hereby advised to consult with an attorney of his own choosing at his own cost prior to signing this Agreement and acknowledges that he has done so.

> Revocation.  Gasper understands he has the right to revoke this Agreement for a period of seven (7) days after the date that he signs it by giving written notice of such revocation to counsel for the Schulson Defendants, delivered to:

> Carianne P. Torrissi, Esquire
> Goldberg Segalla LLP
> ctorrissi@goldbergsegalla.com

> The Agreement, including the waiver of ADEA claims, shall not become effective until the eighth day following Gasper's execution of it.

> Effect of Revocation.  If Gasper revokes his waiver of ADEA Claims, he will not be entitled to any payment provided for in this Agreement, but such revocation will not be effective with respect to the remainder of this Agreement. The other claims covered under this Release and the consideration Gasper received prior to his revocation is valid and adequate consideration with respect to the remainder of this Agreement and his waiver of such other claims; and

> Knowing and Voluntary Waiver and Release of Claims.  Gasper has waived his ADEA claims knowingly and voluntarily in exchange for the benefits contained herein, and he acknowledges that he would not otherwise have been entitled to those benefits.

> OWBPA Compliance.  This Agreement complies in all respects with Section 7(f) of ADEA, that is, the waiver provisions of the Older Worker Benefit Protection Act amendments to ADEA.

4.  No Other Benefits Due.  Gasper warrants and represents that during the course of his employment with the Schulson Defendants that no work related injury or illness potentially covered under workers' compensation laws occurred that has not already been reported to the Schulson Defendants as of the date he signs this Agreement.  In addition, Gasper

26619763.v1

acknowledges and agrees that during his employment with the Schulson Defendants no serious medical or health condition potentially covered under the FMLA occurred that has not already been reported to the Schulson Defendants.

5. <u>No Claims Permitted/Covenant Not to Sue</u>.  Gasper agrees not to file any charges, claims, suits, complaints or grievances against the Released Parties with any Federal, State or local government agency, or in any court of law, with respect to any aspect of his employment by, or separation from employment with, the Schulson Defendants with the exception of any claim that the Schulson Defendants violated their commitments under this Agreement, at any time hereafter.

6. <u>Non-Disparagement</u>.  Gasper hereby covenants and promises to refrain from making any disparaging or otherwise negative remarks of any kind about the Schulson Defendants, their business, business practices or employees at any time hereafter.  Likewise, the Schulson Defendants agree that Michal Schulson and Schulson Collective's executive officers will not disparage Gasper.

7. <u>No Admission of Liability</u>.  This Agreement is being executed as a compromise of disputed claims and is not, and shall not be construed as, an admission or concession of liability or wrongdoing of any nature on the part of any party, and by whom liability is expressly denied.  The Schulson Defendants expressly deny each and every one of the allegations of wrongdoing made by Gasper and specifically deny any liability whatsoever for any damages, injuries, or other claims by Gasper or which Gasper could claim.  Gasper agrees that he will not be considered a prevailing party under any statute, common law, or otherwise as a result of this Agreement.

8. <u>Successors and Assigns</u>.  The parties are bound by this Agreement, as well as those who succeed to their rights and responsibilities.  Accordingly, Gasper's heirs, the executor of his estate, and/or his personal or legal representatives, as well as the successors or assigns of the Schulson Defendants, are also bound by this Agreement, and this Agreement also inures to their benefit.

9. <u>No Re-employment</u>.  Gasper agrees not to seek employment or re-employment with the Schulson Defendants (including any corporate parent, subsidiary or affiliate of) or to seek any remedies as a result of the denial of employment or re-employment by the Schulson Defendants or any of their corporate parents, subsidiaries or affiliates.  Notwithstanding the foregoing, in the event that the Schulson Defendants acquire an entity where Plaintiff is currently employed, Plaintiff will not be terminated or obligated to resign due to this Agreement.

10. <u>Neutral Reference</u>.  Schulson Collective LLC will only respond to inquiries regarding Gasper from potential employers in a neutral manner, providing only dates of employment, position held and final salary.  All such inquiries must be directed to Mr. Michael Parisi.

11. <u>Effect of Breach</u>.  In any action asserted by any party for a breach of this Agreement, the non-prevailing party in any such action shall be obligated to reimburse the prevailing party for all reasonable attorneys' fees and costs it incurs as a result of any such breach.

12. <u>Acknowledgements</u>.  Gasper expressly acknowledges and represents that:

> He has carefully read and fully understands all provisions of this Agreement, and that he enters into this Agreement knowingly and voluntarily;

> He has no physical or mental impairment of any kind that has interfered with his ability to read and understand the meaning of this Agreement or of its terms; and

> He has not relied on inducements, promises or representations made by anyone other than those embodied in this Agreement in making his decision to sign this Agreement.

13. <u>No Reliance</u>.  The parties further state that each is not relying upon and has not relied upon any representation or statement made by any of the other(s) with respect to the controversies involved in this Agreement or with regard to Gasper's rights or asserted rights.  Each party assumes the risk of all mistakes of fact with regard to the controversies involved in this Agreement and with regard to all facts.

14. <u>Controlling Law</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania without regard to choice of law principles, except as preempted by federal law.

15. <u>Enforceability</u>.  The parties agree that in the event that any one or more of the provisions of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby.

16. <u>Counterparts</u>. This Agreement may be signed in any number of counterparts, each of which shall be deemed to be an original with respect to any party whose signature appears on such counterpart and all of which shall together constitute one and the same instrument.

17. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement of the parties, supersedes and extinguishes any and all prior statements, agreements, representations or understandings by or among the parties to this Agreement, and may not be modified or amended except in writing, signed by all parties.

26619763.v1

Intending to be legally bound, the parties have signed this Confidential Settlement and General Release Agreement.

**VINCENT M. GASPER**                        **SCHULSON COLLECTIVE LLC**

_____                      By: _____

Date: _____                          Title: _____

                                             Date: _____


                                             **MICHAEL SCHULSON**


                                             _____

                                             Date: _____

6

26619763.v1

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VINCENT M. GASPER** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 19-2676** |
| : | |
| **SCHULSON COLLECTIVE, LLC, ET AL.** : | |
| : | |
| **Defendants.** : | |
| : | |

**DECLARATION OF FERNANDO I. RIVERA, ESQUIRE IN SUPPORT OF
THE PARTIES' JOINT MOTION SEEKING APPROVAL OF SETTLEMENT**

Fernando I. Rivera, Esquire, does hereby certify that:

1.      I make this Declaration upon my personal knowledge and a review of the file in this case.

2.      I am an associate attorney of Console Mattiacci Law, LLC ("CML"), and I am authorized to make this Declaration.

3.      For more than 29 years, CML has specialized in representing non-union employees in all aspects of workplace matters, including discrimination and retaliation cases, in administrative proceedings and state and federal litigation. CML is included among the Martindale-Hubbell Bar Register of Preeminent Lawyers, which is exclusive to AV Preeminent Attorneys—those who have achieved the highest possible peer review rating in both legal ability and ethical standards.

4.      CML is highly selective of the cases accepted by the firm. At present, CML represents only a small fraction of the clients who contact our firm for representation. CML is dedicated to providing outstanding representation to its clients. CML's current legal staff is made

up of eighteen attorneys and eight paralegals/legal assistants. Work is allocated in a way so as to ensure excellent representation in an efficient manner.

5.      I am a graduate of the Drexel University Thomas R. Kline School of Law (J.D. 2014).

6.      I have been admitted to practice law in Pennsylvania and New Jersey since 2014, and I am admitted to practice before the following federal courts: the United States District Court for the Eastern District of Pennsylvania, the United States Court of Appeals for the Third Circuit, and the United States District Court for the District of New Jersey.

7.      Since joining CML as an attorney in 2017, I have specialized my practice exclusively on representing individual-employees who have been victimized by illegal employment practices concerning discrimination, retaliation, workplace harassment, wrongful termination, whistleblower claims, medical leaves, disability leaves, wage and hour claims, employment contract disputes, and other employment-related matters.

8.      Prior to joining CML and since then, I have handled numerous employment law cases, including wage and hour cases involving the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment and Collection Law ("PWPCL").

9.      I have been recognized by my peers as a "rising star" in the area of employment litigation. Without limitation, I was named to the "Pennsylvania Rising Stars" list by Philadelphia Magazine and Philadelphia Super Lawyers Magazine in 2018, 2019, and 2020, I was named to the "New Jersey Rising Stars" list by New Jersey Super Lawyers Magazine in 2020.

10.     On November 21, 2018, Plaintiff retained CML to represent him with respect to his claims of wage and hour violations and employment discrimination on a continency fee basis of

forty percent (40%) of any net recovery, after the reimbursement of any out-of-pocket costs incurred by CML.

11.     On February 4, 2019, Plaintiff filed a Complaint of Discrimination with the PHRC, which was cross-filed with the EEOC, against Defendant Schulson Collective, which alleged claims of wrongful termination from employment in violation of Title VII, the PHRC, and the PFPO (the "Termination Claims").

12.     On June 19, 2019, Plaintiff commenced this litigation against Defendants alleging claims of unpaid overtime compensation in violation of state and federal law, including the FLSA (the "Wage Claims").

13.     On May 20, 2020, after the exchange of written discovery, but before conducting depositions, the parties attended a settlement conference before Magistrate Judge Lynne A. Sitarski, which resulted in a preliminary global settlement of all of Plaintiff's claims, including the Wage Claims and the Termination Claims.

14.     From October 2018, I performed 112.4 hours of work on the Wage Claims. In summary and without limitation, investigating Plaintiff's claims; drafting and filing Plaintiff's Complaint; propounding three sets of discovery requests upon Defendants, including a set of requests for admissions; issuing and coordinating service of third-party subpoenas; responding to Defendants' discovery requests; reviewing Defendants' discovery responses; resolving several discovery disputes, including sending and responding to deficiency letters; reviewing Plaintiff's discovery documents and ESI, including reviewing, redacting, and producing over 1,100 pages of ESI; conducting preparation sessions with Plaintiff related to his deposition; negotiating

settlement, including negotiating the terms of the settlement agreement; preparing for and attending a settlement conference; and petitioning the Court to obtain approval of the settlement.[1]

15.     Because CML represented Plaintiff on a straight forty percent (40%) contingency fee arrangement, Plaintiff has not paid any money to CML as this litigation proceeded.

16.     The rate that CML customarily charges for my time is $320.00 per hour.

17.     From November of 2018 to the filing of this Declaration, I have performed approximately 112.4 hours of services related to this case, which would result in a lodestar amount (excluding litigation costs) of $35,968.

18.     To date, CML has accrued $1,091.61 in reimbursable out-of-pocket costs associated with this litigation. Pursuant to the contingent fee agreement between CML and Plaintiff, the total fees and costs to which CML would be entitled to recover is $35,091.61 ($34,000 in attorneys' fees and $1,091.61 in litigation costs).

19.     In accordance with CML's policy, I recorded on a contemporaneous basis the time I spent working on Plaintiff's case. I have reviewed the itemized entries for my time on this case prior to making this Declaration.

I understand the foregoing Declaration is made subject to the penalties of 28 U.S.C. § 1746 relating to unsworn falsification to authorities.

By:     _____

          FERNANDO I. RIVERA, ESQ.


DATE: July 15, 2020

---

[1] Time spent by partners and paralegals of CML on this case are not calculated into the 103.8 hours represented.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of July, 2020, I caused the foregoing to be served, via

ECF, upon counsel for Defendants below:

Carianne P. Torrissi, Esquire
GOLDBERG SEGALLA, LLP
PO Box 360, Buffalo, NY 14201
1700 Market Street, Suite 1418
Philadelphia, PA 19103
ctorrissi@goldbergsegalla.com

*Attorneys for Defendants*

**CONSOLE MATTIACCI LAW, LLC**

By:    */s/ Fernando I. Rivera*
FERNANDO I. RIVERA, ESQ.
1525 Locust St., 9th Floor
Philadelphia, PA 19102
rivera@consolelaw.com
(215) 545-7676 (office)
(215) 754-4938 (fax)

Dated: July 15, 2020                    *Attorneys for Plaintiff*